UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE FARM LIFE INSURANCE COMPANY, | CIV-F-09-0356 AWI SMS |
| Plaintiff, | ORDER RE: MOTION FOR ENTRY OF JUDGMENT IN INTERPLEADER AND MOTION FOR ATTORNEYS' FEES AND COSTS |
| v. | |
| RACHEL BROCKETT, JOSHUA BROCKETT, DANELLE BROCKETT, NICHOLAS BROCKETT, and KATHRYN BROCKETT | |
| Defendants. | |

**I. History**[1]

Plaintiff State Farm Life Insurance Company ("State Farm") insured the life of Matthew Brockett for a number of years. Rachel Botkin and Matthew Brockett married in 2002. Joshua Brockett, Danelle Brockett, Nicholas Brockett, and Kathryn Brockett (collectively the "Brockett Children") are Matthew Brockett's children by a previous marriage. On August 7, 2006, the life insurance policy was increased to $500,000, with Rachel Brocket to receive $380,000, and the Brockett Children to receive $30,000 each. Matthew and Rachel Brockett separated in early

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

2008.  On March 11, 2008, Matthew Brockett filed for divorce.  On April 8, 2008, Matthew and Rachel Brockett signed a Marital Settlement Agreement ("MSA").  The MSA included language concerning life insurance proceeds.  On June 24, the Fresno County Superior Court entered a judgment of dissolution incorporating the MSA and specifying that Matthew and Rachel Brockett would become single persons on September 25.  Matthew Brockett obtained and signed a change of beneficiary form which removed Rachel Brockett and named the Brockett Children as sole beneficiaries; however, he never mailed it in.  Matthew Brockett died on September 15, 2008.  Rachel Brockett claims $380,000 of the life insurance proceeds.  The Brockett Children claim all $500,000 of the life insurance proceeds.

On February 26, 2009, State Farm filed suit against Rachel Brockett and the Brockett Children on an interpleader theory in the Eastern District of California.  State Farm brought suit based on diversity jurisdiction under 28 U.S.C. §1332.  State Farm is a citizen of Illinois; Rachel Brockett and the Brockett Children are citizens of California; and the amount in controversy is $380,000.  State Farm has also deposited the entire life insurance payment of $512,217.70 ($500,000 plus interest) with the Clerk of the Court.  The parties discussed whether a stipulation to dismiss State Farm and move the case to state court could be achieved.  They could not reach an agreement.

State Farm has now moved for $18,200 in fees and costs and to be dismissed from this suit as it has no claim on the insurance proceeds at issue. Doc. 22, Motion in Judgment in Interpleader and Doc. 23, State Farm's Brief, at 5:2.  Rachel Brockett and the Brockett Children agree to dismiss State Farm from this case. Docs. 33 and 50.  The Brockett Children do not oppose the amount State Farm seeks to recover for attorneys' fees and costs. Doc. 50.  Rachel Brockett asks the court to limit the amount to $5,000. Doc. 33, Rachel Brockett's Opposition, at 1:28.  The matter was taken under submission without oral argument.

## II. Legal Standards

"Any person, firm, corporation, association or other entity against whom double or multiple claims are made, or may be made, by two or more persons which are such that they may

give rise to double or multiple liability, may bring an action against the claimants to compel them to interplead and litigate their several claims." Cal. Code Civ. Proc. 386(b).  That party can then "apply to the court for an order discharging him from liability and dismissing him from the action on his depositing with the clerk of the court the amount in dispute and the court may, in its discretion, make such order." Cal. Code Civ. Proc. 386.5.  "A party to an action who follows the procedure set forth in Section 386 or 386.5 may insert in his motion, petition, complaint, or cross complaint a request for allowance of his costs and reasonable attorney fees incurred in such action. In ordering the discharge of such party, the court may, in its discretion, award such party his costs and reasonable attorney fees from the amount in dispute which has been deposited with the court." Cal. Code Civ. Proc. §386.6(a).

Under diversity jurisdiction, Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938) applies so California law must be consulted. See Asbury v. Mitchell, 1997 U.S. Dist. LEXIS 9293, *7-8 (E.D. Cal. June 18, 1997).  "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award. The reasonable hourly rate is that prevailing in the community for similar work. The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." PLCM Group, Inc. v. Drexler, 22 Cal. 4th 1084, 1095 (Cal. 2000), citations and quotations omitted.  "The lodestar adjustment method...has also been widely applied by the Courts of Appeal under a broad range of statutes authorizing attorney fees...The Legislature appears to have endorsed the lodestar adjustment method of calculating fees, except in certain limited situations. When the Legislature has determined that the lodestar adjustment approach is not appropriate, it has expressly so stated. Thus, in 1993, it amended Code of Civil Procedure section 1021.5 to provide that attorney fees awarded to a public entity under the section 'shall not be increased or decreased by a multiplier

3

based upon extrinsic circumstances...' Its express restriction on the use of fee enhancements therein can be read as an implicit endorsement of their use in other contexts." Ketchum v. Moses, 24 Cal. 4th 1122, 1134-35 (Cal. 2001), citations and quotations omitted.  Section 386.6 does not specify how attorneys' fees are to be calculated, so the default lodestar method will be used.

Of significance is the fact that any award of fees under Section 386.6 is discretionary. "This grant of discretion tracks federal law with respect to the award of fees in an interpleader." Law Offices of Jonathan Stein v. Cadle Co., 1999 U.S. Dist. LEXIS 14162, *4 (C.D. Cal. 1999); see also Anchor Brewing Co. v. Peix, 2007 U.S. Dist. LEXIS 18428, *5 (N.D. Cal. Feb. 28, 2007).  "While the Ninth Circuit has announced a general rule that a plaintiff should receive fees for his or her actions in interpleading, courts have also looked to number of other factors in tailoring that broad rule. The Rutter Group's California Practice Guide to Civil Procedure Before Trial notes that courts have considered, among other things: the necessity of the services, the diligence in pursuing a remedy, the degree to which the determination is part of the stakeholder's ordinary cost of doing business, whether the interested stakeholder acted for his or her own benefit, and the relationship of the activity to preservation of the fund." Law Offices of Jonathan Stein v. Cadle Co., 1999 U.S. Dist. LEXIS 14162, *5 (C.D. Cal. 1999), citations omitted.  "[T]he trial court may rely on its own experience and knowledge in determining the reasonable value of the attorney's services." Niederer v. Ferreira, 189 Cal. App. 3d 1485, 1507 (Cal. Ct. App 1987), citations omitted; see also Kirk v. Culley, 202 Cal. 501, 508-9 (Cal. 1927).

### III. Discussion

State Farm has requested a total of $18,200 in attorneys' fees and costs.  That figure includes $1,058.70 in costs , $12,200.50 for documented attorneys fees through November 1, 2009, and an estimated $5,000 for attorneys' fees since that time.  Rachel Brockett seeks to limit total fees and costs to $5,000.

The lead attorney for State Farm is Robert Pohls, principal of Pohls & Associates, who billed at a rate of $260/hour in this case.  The majority of the work was done by Kenneth Perscheid, an associate, who billed at a rate of $225/hour.   In addition, there was a small amount

4

of copying done by Suzanne Arbil, an individual whose status is unknown and who billed at a rate of $140/hour.  A search of the State Bar of California website reveals no record of Suzanne Arbil; the court presumes that she is not a licensed attorney.[2]  State Farm has provided billing records for the case through November 1, 2009. See Doc. 24, Part 3, Ex. 3; Part 5, Ex. 7; Part 6, Ex. 9; Part 6, Ex. 10; Part 7, Ex. 12; Part 9, Ex. 16.  These billing statements provided by State Farm show a total of 57.0 hours of work in that time frame: Robert Pohls billed 17.5 hours; Kenneth Perscheid billed 38.2 hours; and Suzanne Arbil billed 1.3 hours.  The attorneys' fees total $13,327.00 and the costs total $1,094.75.  In contrast, Robert Pohls provides a summary of the hours worked and costs incurred for a total of $12,200.50 in attorneys' fees and $1,058.70 in costs for that period. Doc. 24, Pohls Declaration, at 6:20-21.  State Farm provides no explanation for the discrepancy in either attorneys' fees or costs.[3]  The remaining $5,000 requested is an estimate of the amount to be spent on this motion itself, including the cost of arguing the motion in Fresno. Doc. 24, Pohls Declaration, at 7:3-17.  As a preliminary matter, this matter was submitted on the papers; no oral argument was held.  Using State Farm's own estimates, that should reduce the amount sought by $1,250.

 Of the $12,200.50 in attorneys' fees and $1,058.70 in costs as of November 1, 2009, State Farm claims that the amount was spent on the following tasks:

---

[2]This is a matter of public record of which the court takes judicial notice.

[3]There appear to be a number of minor errors in Robert Pohl's declaration as to the number of hours billed.  Pohl's claims "20.0 hours reviewing State Farm's file regarding the disputed claims which are the subject of this interpleader action, communicating with State Farm about those disputed claims, then preparing and filing State Farm's complaint in interpleader." Doc. 24, Pohl's Declaration, at 2:8-11.  Review of the billing statement shows 20.9 hours spent in that time frame. See Doc. 24, Part 2, Ex. 3, Feb. 2 and March 9, 2009 Billing Statements.  The amount billed reflected 20.9 hours of work.  The only error that resulted in an incorrect amount of money claimed is in the March 1 to May 31, 2009 period.  Pohls claims attorneys' fees of $2,921.00 and separate costs of $34.50 when the billing statements reflect attorneys' fees of $2,886.50. Doc. 24, Pohl's Declaration, at 4:1-3; Doc. 24, Part 5, Ex. 7, April 1, April 30, and June 2, 2009 Billing Statements.  It appears that Pohls simply double counted $34.50 in costs as $2,886.50 plus $34.50 equals $2,921.00.  However, these mistakes do not explain the discrepancy between the billing records and the amount requested by State Farm.

    1. Review file materials regarding the defendants' competing claims and advise it of the propriety of filing a complaint in interpleader [Pohls Decl., ¶3 and Ex. 3];

    2. Draft and file the complaint in interpleader, as well as several related documents [Pohls Decl., ¶3 and Ex. 3];

    3. Communicate with the defendants, first to ask that they formally waive service of process, then to ask that they communicate with each other about the possibility of stipulating to the entry of a judgment in interpleader which either: a) directed how the proceeds should be distributed; or b) provided that the remaining issues be transferred to state court for resolution without State Farm's involvement [Pohls Decl., ¶¶4-8 and Ex. 4-7];

    4. Prepare for and attend the Scheduling Conference made necessary by the defendants' delays in formally joining this lawsuit [Pohls Decl., ¶10 and Ex. 9];

    5. Prepare the initial disclosures mandated by Rule 26 of the Federal Rules of Civil Procedure, as well as other documents at the Court's direction [Pohls Decl., ¶¶11-12 and Ex. 10]; and

    6. Prepare and communicate with the defendants about a proposed stipulation for the entry of a judgment in interpleader [Pohls Decl., ¶¶13-20 and Ex. 11-18].

Doc. 48, State Farm's Reply, at 2:12-25.  Rachel Brockett states "this interpleader action presents very simple, straightforward factual and legal issues, none of which warranted extra-ordinary expertise or handling. Indeed, the general practice is for attorneys practicing this type of law to utilize standard pleading forms which greatly reduce the amount of time and resources needed to pursue the desire[d] relief." Doc. 33, Rachel Brockett's Opposition, at 4:7-11.  Specifically, she claims that the number of hours spent on various tasks were excessive.  Based on the billing records provided, she calculates that 9.7 hours were spent preparing the complaint, 11 hours on other pleadings, 18.5 hours were spent on internal communications, 12.3 hours were spent communicating with counsel for defendants, with the remainder on unnecessary miscellaneous tasks. See Doc. 33, Rachel Brockett's Opposition, at 5:4-25.  State Farm objects to Rachel Brockett's characterization of the number of hours spent on each of those categories, claiming 4.7 hours preparing the complaint, 1.5 hours preparing other pleadings, 2.3 hours on internal communications, and 7.4 hours communicating with counsel for defendants. See Doc. 48, State Farm's Reply, at 5:5-7:26.  Of note, the time spent preparing the complaint, preparing other pleadings, and communicating with counsel for defendants roughly corresponds to items 2, 3, and 6 of State Farm's list of tasks quoted above.  Accepting State Farm's representations in the

Reply, these three tasks took 13.6 hours while internal communications took another 2.3 hours. Added up, that totals 15.9 hours of work. State Farm does not explain how the remaining 41.1 hours of work billed as of November 1, 2009 is broken down. Item 1 is review of the file and deciding to file a complaint in interpleader; item 4 is preparation for and attending a scheduling conference; and item 5 is preparing Rule 26 disclosures. The bill reflects 5.7 hours spent traveling to and attending the conference. Doc. 24, Part 6, Ex. 9, Aug. 4, 2009 Billing Statement. Based on the court's experience, initial review of this basic matter and Rule 26 disclosures at this early stage should take about 7 hours of work. Additionally, briefing for this motion should be no more than 7 hours of work. That adds up to a total of 35.6 hours for all work on the case to date compared to the 57.0 hours reflected in the billing statements through November 1, 2009. The amount State Farm requests in attorneys fees is unreasonable; the number of hours billed is excessive. As far as can be determined, the rates at which Robert Pohls and Kenneth Perscheid billed was reasonable. Based on the records provided, the court estimates that Robert Pohls did 10.6 hours of work and Kenneth Perscheid did 25 hours of work. That leads to attorneys fees of $8,381.

Rachel Brockett does not specifically explain why she feels the $1,058.70[4] sought in costs is excessive. The billing statements show that most of it comprised of a few specified costs: $260.00 U.S. District Court filing fee, $445.00 paid to Carson Attorney Service for depositing the $512,217.00 with the court, $172.70 for travel to and from Fresno for the scheduling conference. See Doc. 24, Part 3, Ex. 3, Mar. 9, 2009 Billing Statement and Doc. 24, Part 6, Ex. 9, Aug. 4, 2009 Billing Statement. The court accepts the amount State Farm requests as reasonable.

Thus, the court awards attorneys fees of $8,381 and costs of $1,058.70 for a total of $9,439.70. In comparison, courts in the Eastern District have awarded less in recent interpleader cases. See Wells Fargo Bank v. PACCAR Fin. Corp., 2009 U.S. Dist. LEXIS 9856, *6-8 (E.D. Cal. Jan. 27, 2009) ($4,788.00 in fees and $787.55 in costs); Allstate Life Ins. Co. v. Dall, 2008

---

[4]Though the billing records reflect $1,094.75 in costs, the court will work with the lesser amount requested by State Farm.

U.S. Dist. LEXIS 77106, *4-5 (E.D. Cal. June 27, 2008) ($5,000 in fees and $725.80 in costs). Indeed, in at least one similar case from long ago, attorneys fees and costs were denied altogether. See Prudential Ins. Co. v. Burress, 181 F. Supp. 391, 393 (S.D. Cal. 1960) (interpleader concerning conflicting claims to life insurance proceeds).

### IV. Order

Having deposited the proceeds of life insurance policy number LF-0871-9628 covering Matthew Brockett plus accrued interest (totaling $512,217.70) with the Clerk of the Court, State Farm Life Insurance Company is discharged from liability for current or potential claims regarding those proceeds. State Farm is awarded $8,381 in attorneys' fees and $1,058.70 in costs for a total of $9,439.70; the Clerk of the Court is directed to pay that amount out of the deposited funds. State Farm is hereby dismissed from this action.

IT IS SO ORDERED.

Dated:   April 16, 2010                           /s/ Anthony W. Ishii
                                        CHIEF UNITED STATES DISTRICT JUDGE